IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Criminal Case No. 18-cr-00480-PAB

UNITED STATES OF AMERICA,
 Plaintiff,

v.

LYLE WILLIAM PERRY,

 Defendant.

---

### LYLE PERRY'S REPLY IN SUPPORT OF RENEWED MOTION FOR COMPASSIONATE RELEASE

---

 COMES NOW, Lyle Perry, by and through undersigned counsel, and hereby submits this Reply in support of his Renewed Motion for Compassionate Release. Mr. Perry asks the Court to allow him to serve his sentence without being unnecessarily subject to the high risk of serious illness or death from COVID-19 that he faces due to diabetes, obesity, asthma, hypertension, and being 60 years of age. *See United States v. Pomante*, No. 19-20316, 2020 WL 2513095, at *8 (E.D. Mich. May 15, 2020) (granting compassionate release for diabetic inmate). Mr. Perry asks that the Court reduce his sentence to time served with a period of supervised release under appropriate conditions—including home confinement if deemed necessary by the Court—as a just sentence under these grave and unprecedented circumstances. *United States v. Al-Jumail*, No. 12-20272, 2020 WL 2395224, at *4 (E.D. Mich. May 12, 2020) (granting motion for 60 year old defendant with diabetes and heart conditions, and imposing a term of supervised release under home confinement equal to original prison term).

 In its Response (Doc. 70), the government concedes the defense's arguments, except one.

1

The government concedes the issue of exhaustion, on which this Court previously denied the motion without prejudice, so it is now undisputed the court "has jurisdiction" to grant relief. (Doc. 70 at 3.) The government concedes that Mr. Perry suffers from medical conditions which place him at high risk of serious illness or death from COVID-19. (*Id.* at 6-7.) The government concedes that this condition, and the life-threatening risk to Mr. Perry from COVID-19, constitutes an "extraordinary and compelling reason" in support of compassionate release under 18 U.S.C. § 3582. (*Id.* at 8.)

However, the government still suggests the Court should deny relief under the traditional § 3553(a) analysis, focusing primarily on the seriousness of the offense and general deterrence. These arguments have been rejected by multiple courts and are inconsistent with the unprecedented disruptions of this global pandemic and the gravity of the risk facing Mr. Perry. The motion should be granted.

**1. Courts Are Granting Relief for Similarly Situated Defendants.**

Ignoring the other sentencing factors, the government focuses on the "seriousness" of this non-violent offense and suggests that deterrence remains "paramount" in assessing the appropriate relief. (Doc. 70 at 9.) Deterrence and the seriousness of the offense are undoubtedly important, but Mr. Perry contends that granting relief would fairly reflect these interests. The government fails to explain how releasing Mr. Perry under these extraordinary circumstances would undermine either deterrence or the seriousness of the offense; and the government's lack of authority for this proposition—they cite only one easily distinguishable case—is telling.

As an initial matter, the government ignores other factors to be considered under the § 3553(a) analysis, including the need "to provide just punishment," to ensure the sentence

provides needed "medical care," and to ensure the defendant receives "correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1)(A)-(D). These factors weigh heavily in favor of granting relief. Unnecessarily risking that Mr. Perry become infected, and potentially succumb to the COVID-19 virus, would undermine the correctional goals of the sentence, nor would it be a just or effective sentence.

In support of Mr. Perry's position, Courts have granted relief for similar defendants because the issue of general deterrence has limited bearing given the current crisis and the deadliness of this virus. These Courts crafted appropriate alternatives sentences, consistent with § 3553(a), for older defendants with medical vulnerabilities like diabetes, hypertension, and obesity, and non-violent inmates who pose a low public safety risk and can be safely supervised.[1] *See, e.g., United States v. Al-Jumail*, No. 12-20272, 2020 WL 2395224, at *4 (E.D. Mich. May 12, 2020) (granting motion for 60 year old defendant with diabetes and heart conditions, and imposing a term of supervised release equal to his original term of imprisonment); *United States v. Pomante*, No. 19-20316, 2020 WL 2513095, at *4 (E.D. Mich. May 15, 2020) (granting relief for defendant with diabetes, hypertension, obesity, and other conditions); *United States v. Zukerman*, No. 16 CR. 194 (AT), 2020 WL 1659880, at *6 (S.D.N.Y. Apr. 3, 2020) (granting motion for defendant with diabetes, hypertension, and

---

[1] Mr. Perry does not argue that he was treated unfairly by the government during the prosecution of the case. Nor does he contend that his sentence was unfair. However, Mr. Perry suffers from each of health issues which make him medically vulnerable to COVID-19. In its response, the government misstates certain facts, suggesting Mr. Perry may not have asthma or be obese, when medical evidence documents both conditions. (Doc. 67-3.) The government also suggests hypertension is not a high-risk factor, when mounting medical evidence strongly indicates that it is. Mr. Perry disputes these factually incorrect arguments by the government. However, because the government concedes his medical vulnerability and concedes "extraordinary and compelling reasons" under the statute, that issue need not be further addressed. The sole disputed issue is whether the Court can craft an appropriate sentence under § 3553(a) while safely removing Mr. Perry from prison.

obesity); *United States v. Rodriguez*, No. 2:03-cr-271, Doc. # 135 at 2 (E.D.P.A. Apr. 1, 2020) (granting compassionate release because for diabetic inmates "nothing could be more extraordinary and compelling than this pandemic"); *United States v. Lopez*, No. 18-CR-2846 MV, 2020 WL 2489746, at *3 (D.N.M. May 14, 2020).

Downplaying the gravity of the risks to Mr. Perry, the government suggests that releasing Mr. Perry when he's served 10% of his sentence would undermine general deterrence—but that is exactly the argument rejected by *Pomante*, where the Court reduced a sentence to time served even though the defendant had served only 10% of the original prison sentence. *Pomante*, 2020 WL 2513095, at *8. There, the defendant was convicted of a wire fraud conspiracy where the he'd "fraudulently obtained nearly $107 million in government set-aside contracts," a sum well in excess of that involved in Mr. Perry's case. The Court originally sentenced the defendant to 12 months imprisonment after granting a downward variance, and the defendant had served only 2 months of that sentence. *Id.* Because the defendant faced a high risk of harm from COVID-19 due to being 69 years old and suffering from diabetes, hypertension, obesity, and chronic kidney disease, the Court granted the motion for time served, noting that "***Defendant's crime was egregious, but it was ultimately nonviolent***." *Id.* (emphasis added). Therefore, the § 3553(a) factors weighed in support of granting relief. The Court ordered the defendant serve a term of supervised release "under home confinement" equal to the original prison term (or, 12 months). *Id.* at *8.

The same is true for Mr. Perry, who is undisputedly at high risk for COVID-19 and was also convicted of a non-violent fraud conspiracy involving millions of dollars. The *Pomante* case is also instructive because the Court rejected similar arguments made by the government here regarding the relatively likelihood of an outbreak in a given prison facility. The

4

government suggests that—although at least one staff member at FPC Englewood has tested positive, *see* Doc. 70 at 4—the Court should wait until there is a full-blown outbreak before granting relief. That would be too little too late for Mr. Perry. By the time he's exposed—which could happen any moment through asymptomatic spread—his death sentence may be sealed.

The Court in *Pomante* therefore rejected the same unpersuasive argument, noting that due to very limited testing in the BOP, "a lack of confirmed cases has very little bearing on the amount of actual cases in a federal prison," 2020 WL 2513095, at *4. Here, likewise, in a major omission, the government has failed to present any argument or evidence on the number of staff or inmates tested for COVID-19 at FPC Englewood. The BOP website is similarly silent on this critical information. Without any evidence that widespread testing has occurred to ascertain the level of asymptomatic spread of the virus, there is no way to know how many staff or inmates at FPC Englewood in fact have the virus.

Moreover, medical evidence still confirms that, even with zero cases, a prison "is still at risk of exposing inmates" because staff and others going to and from the facility may bring in the virus at any moment. *Id.* Here, the metro Denver area is a hot spot of COVID-19 cases and deaths. Staff at Englewood certainly live in Jefferson County, Arapahoe County, Denver County, and other metro Denver areas, where COVID-19 cases easily exceed 10,000 total and accounting for approximately 1,000 or more deaths.[2] At any point, an asymptomatic staff member or new inmate might become infected and bring in the deadly virus, exposing Mr. Perry.[3]

---

[2] https://coloradosun.com/2020/03/08/colorado-coronavirus-cases-map/.
[3] In a concerning omission, the BOP fails to disclose how many inmates or staff it has tested at various facilities, and that remains true at Englewood, where at least one staff member has been positive.

Furthermore, looking at the actual language of § 3553(a)(2)(B), the statute says that the court should consider the need for a sentence "to afford *adequate* deterrence"—not that deterrence be absolute or prioritized over other factors in a given situation. *Id.* (emphasis added). Here, Mr. Perry has served a number of months in prison while living in constant fear of contracting this deadly virus; during that time, his elderly and ailing mother died, a heartbreaking loss for Mr. Perry. The experience of being in prison has been horrible for Mr. Perry, and surely a powerful specific and general deterrent. Therefore, even in view of the need for adequate deterrence, granting the motion would appropriately recognize that sentencing factor.

We are "in unprecedented times" due to COVID-19 and the deadly nature of this pandemic, and granting relief is appropriate in view of the § 3553(a) factors, including deterrence, the seriousness of the offense, as well as the need to ensure a just punishment, afford the defendant adequate medical care, and ensure correctional treatment in an effective manner. *Pomante,* 2020 WL 2513095, at *8.

**2. The Government Fails to Cite Authority Suggesting Relief Would be Inappropriate.**

Mr. Perry cites multiple cases where Courts have granted relief for similar defendants and presents substantial reason why the unique circumstances of this case support granting the motion. In its response, the only case cited by the government in opposing relief is pre-pandemic and is easily distinguishable. (Doc. 70 at 9) (citing *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D. N.M. 2019) (pre-COVID-19 case where court denied compassionate release)).

In *Willis*, the issue was not whether COVID-19 posed an unfair and unnecessary risk to the defendant's health such that compassionate release was appropriate—the order was issued in June of 2019 and predates the pandemic entirely. *Id.* Rather, the issue was whether the defendant's medical

6

conditions standing alone justified early release, having nothing to do with any particular risks he faced in prison. Moreover, in that case the Court noted its conclusion that "fraud appears ingrained in [the defendant's] character" such that release could not safely be achieved. *Id.* at 1188.

Here, in stark contrast, as in *Zukerman*, *Pomante*, and the dozens of other cases where Courts have granted compassionate release in appropriate cases due to the unique and extraordinary risks of COVID-19, the issue is whether risking Mr. Perry's potential critical illness or death from COVID-19 during his period of incarceration is necessary. As argued herein, Mr. Perry respectfully contends that every § 3553(a) factor will be furthered by granting relief. Also, in stark contrast to *Willis*, here the government conceded Mr. Perry's acceptance of responsibility and cooperation, affording him a downward departure in this matter, and there is every indication Mr. Perry will comply with this Court's orders of supervision if released.

**3. The Court Could Order a Period of Home Confinement to Address the Government's Concerns.**

The Court is empowered to grant the motion and reduce Mr. Perry's sentence to time served and order him placed on supervised release with any conditions the Court deemed necessary to achieve public safety. *See, e.g., Pomante*, 2020 WL 2513095, at *8 (reducing sentence to time served).

However, to the extent the Court is given pause by the government's concerns regarding deterrence or the seriousness of this offense, those concerns can be addressed through a period of home confinement, which can be achieved in at least two ways. First, this Court could grant the motion and reduce the sentence to time served and impose a term of supervised release equal to the amount of his original prison sentence to be served under home confinement with electronic monitoring. *Al-Jumail*, 2020 WL 2395224, at *8 (granting motion and ordering a period of supervised released under home confinement). This would achieve the Court's punitive and deterrence interests, while allowing Mr. Perry to serve his sentence in a safer environment where he is able to maintain social distance.

7

Second, the Court could grant the motion and order a period of home incarceration, which term of home incarceration itself would then be followed by a term of supervised release. *Zukerman*, 2020 WL 1659880, at *1 (granting compassionate release and ordering that defendant's sentence "is modified such that his remaining term of imprisonment is replaced by an equal period of home incarceration.").

Either alternative is available to this Court. The government itself admits home confinement may be adequate by arguing that the Court should allow the BOP to order Mr. Perry into home confinement rather than grant the motion. (Doc. 70 at 10-11.) However, without any basis, the government suggests that waiting for BOP action would be more "narrowly tailored" than this Court's action. (Doc. 70 at 10.) This suggestion should be rejected. Where exhaustion has occurred and this Court has jurisdiction—which is undisputed—this Court has the power to grant relief where appropriate. If the government thinks home confinement is appropriate if ordered by the BOP, it is illogical for the government to oppose the same relief ordered by this Court.

Thus, entertaining the government's suggestion that home confinement could be appropriate in the alternative to a time-served reduction, that is an option available to this Court. A clear way for the Court to achieve that would be through a term of supervised release under home confinement. *Al-Jumail*, 2020 WL 2395224, at *8. Alternatively, in *Zukerman*, in granting compassionate release the Court ordered that the defendant's sentence "is modified such that his remaining term of imprisonment is replaced by an equal period of home incarceration, without electronic monitoring and on such conditions as the Probation Department deems necessary, to be followed by the term of supervised release previously imposed by the Court." 2020 WL 1659880, at *6 ("[a]lthough Zukerman's original release date may be far off, the threat of COVID-19 is at his doorstep.").

8

WHEREFORE, the defendant respectfully requests that this Honorable Court grant Lyle Perry a Compassionate Release from the Federal Prison Camp at Englewood under appropriate supervisory conditions, including a period of home confinement; in the alternative, Mr. Perry requests that this Court modify his sentence to a term of home incarceration.

Respectfully submitted this 1st day of June, 2020.

*s/ Patrick J. Burke*
Patrick J. Burke
Patrick J. Burke, P.C.
303 16th Street, Suite 200
Denver, Colorado 80202
303-825-3050
303-825-2992 fax
Patrick-J-Burke@msn.com

### **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of June, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to the following, ***and also by electronic mail by counsel to U.S. Probation Officer***:

Anna K. Edgar
Assistant United States
Attorney United States
Attorney's Office 1801
California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0409
E-mail:  Anna.Edgar@usdoj.gov

Gary Kruck
United States Probation Officer
The Byron Rogers United States Courthouse
1929 Stout Street, Suite C-120
Denver, CO 80294

*s/ Jennifer J. Feldman*