IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 18-cr-00480-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. LYLE WILLIAM PERRY,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on Mr. Lyle Perry's Renewed Motion for Compassionate Release [Docket No. 67]. The government has filed a response opposing the motion. Docket No. 70. Mr. Perry has filed a reply. Docket No. 74.

**I.   BACKGROUND**

On October 31, 2018, Mr. Perry pled guilty to conspiracy to commit money laundering in violation of 18 U.S.C. § 371. Docket No. 14. On December 6, 2019, the Court sentenced Mr. Perry to, *inter alia*, 36 months imprisonment followed by three years of supervised release. Docket No. 52. Mr. Perry self-surrendered on December 31, 2019 and is currently incarcerated at FPC Englewood. Docket No. 59 at 1.[1]

---

[1] The FCI Englewood complex includes a low security correctional institution ("FCI Englewood"), an adjacent minimum security satellite camp ("FPC Englewood"), and a detention center ("FDC Englewood"). Mr. Perry appears to be incarcerated in the satellite camp. *See* Docket No. 59 at 1; Docket No. 64-1 (request to warden indicating Mr. Perry's cell as "camp").

On March 19, 2020, Mr. Perry filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). *Id*. The Court denied the motion without prejudice because Mr. Perry had failed to exhaust administrative remedies. Docket No. 66; 2020 WL 1676773 (D. Colo. Apr. 3, 2020). On May 18, 2020, Mr. Perry filed a renewed motion for compassionate release. Docket No. 67. Mr. Perry represents that he has medical conditions – including systolic and diastolic hypertension, type II diabetes, morbid obesity, and an autoimmune disease called achalasia – that mean that he is at a high risk of mortality from COVID-19. *Id*. at 4-5; *see also* Docket No. 73 (medical records from the Bureau of Prisons). On this basis, Mr. Perry requests that the Court grant him compassionate release from the remainder of his carceral sentence. Docket No. 67 at 9.[2] In his reply brief, Mr. Perry makes the alternative request that the Court order him to serve the remainder of his sentence on home confinement. Docket No. 74 at 7-8.

## II. ANALYSIS

"Under § 3582(c)(1)(A)(i)," known as the "compassionate release provision," "a district court may grant a sentence reduction if, after considering the 18 U.S.C. § 3553(a) sentencing factors, it finds that 'extraordinary and compelling reasons warrant such a reduction' and the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (unpublished) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). A district

---

[2] Mr. Perry also argues that compassionate release would be appropriate in order for him to care for his mother, Betty Ruth Perry. Docket No. 67 at 4. Unfortunately, Ms. Perry passed away on May 19, 2020. Docket No. 69. Accordingly, the Court does not consider this basis for the requested relief.

court may grant a sentence reduction upon motion of the defendant only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). That requirement is satisfied here. Mr. Perry submitted a request to the warden at FPC Englewood on or about March 22, 2020. Docket No. 64-1. The warden denied his request on April 29, 2020. Docket No. 67-2. As the government concedes, more than thirty days elapsed from the date that Mr. Perry submitted his request to the warden. Docket No. 70 at 3. Accordingly, the Court has jurisdiction to consider the motion.

### A.  Extraordinary and Compelling Reasons

The Sentencing Commission has identified four categories of extraordinary and compelling reasons that may warrant a sentence reduction: (A) medical condition of the defendant; (B) age of the defendant; (C) family circumstances; and (D) other reasons. *See* U.S.S.G. § 1B1.13, cmt. n.1. Mr. Perry argues that his medical conditions – specifically, systolic and diastolic hypertension, type II diabetes, morbid obesity, and achalasia – qualify as extraordinary and compelling reasons for a sentence reduction. Docket No. 67 at 7-8. The Sentencing Commission has explained that a defendant's medical condition may be an extraordinary and compelling reason warranting a sentence reduction where:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not

3

> required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

See U.S.S.G. § 1B1.13, cmt. n.1(A).

Mr. Perry is 60 years old, and his medical records indicate that he is currently suffering from type II diabetes. See Docket No. 73 at 3 (medical report dated April 28, 2020).[3] Other district courts have concluded that diabetes, within the context of the COVID-19 pandemic, qualifies as a serious medical condition under this policy statement. See, e.g., United States v. Lopez, 2020 WL 2489746, at *3 (D.N.M. May 14, 2020) (concluding that 62-year-old defendant with high blood pressure and type II diabetes had shown "extraordinary and compelling reasons" warranting compassionate release); United States v. Al-Jumail, 2020 WL 2395224, at *6 (E.D. Mich. May 12, 2020) (concluding that 60-year-old defendant with diabetes and chronic arterial disease meets the definition of U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)); United States v. Colvin, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (holding that diabetes is a "serious . . . medical condition, which substantially increases [defendant's] risk of severe illness if [defendant] contracts COVID-19" and granting compassionate release (internal

---

[3] Mr. Perry represents that his blood sugar has been "out of control" since his incarceration. See Docket No. 67 at 4. His medical records indicate that his most recent hemoglobin A1C, a measure of a person's blood sugar level over time, is 7.0%. See Docket No. 73 at 3.

quotation omitted)); *United States v. Rodriguez*, 2020 WL 1627331, at *8 (E.D. Pa. Apr. 1, 2020) (concluding that prison "is a particularly dangerous place" for an individual with diabetes). The government concedes that Mr. Perry's type II diabetes is a "serious . . . medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* Docket No. 70 at 7 (quoting U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I)). Accordingly, the Court finds that Mr. Perry has demonstrated an extraordinary and compelling reason warranting a sentence reduction.

### B. Section § 3553(a) Factors

Mr. Perry has shown that extraordinary and compelling reasons exist to reduce his sentence. The question remaining is what, if any, amount of reduction is appropriate, which the Court must consider in light of the sentencing factors outlined in 18 U.S.C. § 3553(a). Mr. Perry requests that his sentence be reduced to time served. Docket No. 67. The government opposes that request, arguing that reducing Mr. Perry's sentence in this case to time served "undermines the objectives of the sentencing factors" by failing to reflect the seriousness of the offense or providing a general deterrent against white-collar crime. Docket No. 70 at 8-9.[4] In his reply, Mr. Perry makes an alternative request that he be released to home confinement for the remaining time on his prison sentence. Docket No. 74 at 7-8.[5]

---

[4] The government does not appear to acknowledge that the risk of serious illness or death as a result of a pandemic was not reflected in the Court's initial sentence for Mr. Perry.

[5] The Bureau of Prisons has the independent authority to release the defendant to home confinement. *See* Docket No. 66 at 4 n.2. The government notes that Mr.

Section 3582(c)(1)(A) allows the Court to, if it grants a motion for a sentence reduction, "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." With that in mind, *Lopez* is instructive. 2020 WL 2489746. In *Lopez*, the court initially sentenced the defendant to 36 months' imprisonment for distribution of oxycodone and fentanyl. *Id*. at *1. Defendant, a 62-year-old man with high blood pressure and type II diabetes, moved for compassionate release as a result of the COVID-19 pandemic with approximately ten months remaining in his sentence. *Id*. at *3. The court concluded that the defendant's age and health conditions, combined with the spread of COVID-19, qualified as an "extraordinary and compelling reason[]" for compassionate release. *Id*. at *4. In light of the severity of the defendant's offense and his criminal history category of V, the court placed the defendant on home confinement as a condition of supervised release for what would have been the remainder of his carceral sentence, a sentence it concluded was supported by the sentencing factors. *Id*.; *see also Al-Jumail*, 2020 WL 2395224, at *8 (reducing defendant's term of imprisonment to time served and imposing an additional term of supervised release to be served under home confinement).[6]

---

Perry has made a request for home confinement which "remains pending with the warden" of FPC Englewood, and argues that the Court should refrain from granting compassionate release in order to allow that Bureau of Prisons to "exercise its expert agency authority" in determining whether Mr. Perry should be released to home confinement. Docket No. 70 at 10. The Court is not persuaded that Mr. Perry's motion should be denied on this basis.

[6] Some district courts have concluded that they lack statutory authority to place an inmate in home confinement. *See, e.g.*, *United States v. Garza*, 2020 WL 1485782 (S.D. Cal. Mar. 27, 2020) (citing *United States v. Ceballos*, 671 F.3d 852 (9th Cir. 2011)); *United States v. Brown*, 2020 WL 1479129 (D. Md. Mar. 26, 2020) (noting that

The Court finds that reducing Mr. Perry's sentence to time served, but extending the period of supervised release and ordering that Mr. Perry serve the time remaining in his carceral sentence in home detention, is appropriate in light of the sentencing factors.  Mr. Perry committed a serious crime.  The stipulated facts in his plea agreement indicate that Mr. Perry created a company in order to launder the proceeds of a scheme that defrauded a nonprofit hospital system out of millions of dollars.  *See* Docket No. 15 at 11-15.  Mr. Perry laundered approximately $7.6 million through the company on his co-conspirators' behalf.  *See id*.  The Court's 36-month sentence for Mr. Perry already represents a downward departure of ten months from the determined guideline range of 46 to 57 months' incarceration.  *See* Docket No. 54 (statement of reasons).  However, the Court must balance this need for just punishment against the risk that COVID-19 poses to Mr. Perry's health, given his age and serious underlying health conditions.  The Court is not persuaded that ordering Mr. Perry to remain in

---

the court may only modify a sentence in certain circumstances).  While it is true that the Bureau of Prisons "has the statutory authority to choose the location where prisoners serve their sentences" once a sentence has been imposed, the Court "has wide discretion in determining the length and type of sentence." *Ceballos*, 671 F.3d at 855; *see also* 18 U.S.C. § 3621(b).  Accordingly, while a court may not direct the Bureau of Prisons to place a prisoner in a particular institution, this logic does not apply where a court determines that a sentence reduction is appropriate pursuant to § 3582(c)(1)(A), which is akin to the Court "determining the length and type of sentence."  This is supported by the text of the compassionate release statute, which contemplates the sentencing court "impos[ing] a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." *See* 18 U.S.C. § 3582(c)(1)(A).  Thus, there is statutory authorization for a court, on a motion for compassionate release, to sentence a defendant to a period of supervised release with the condition of home confinement.  The government appears to acknowledge as much, as it does not argue that the Court lacks the authority to fashion such a sentence for Mr. Perry – only that it should instead defer to the judgment of the Bureau of Prisons.  Docket No. 70 at 10.

prison is appropriate when the government concedes that there are extraordinary and compelling reasons to release Mr. Perry from prison and the option of home detention while on supervised release is available.

The Court believes that sentencing Mr. Perry to serve the remainder of his prison sentence on home confinement "will continue to impose just punishment for his offense[] by restricting his liberty while also reducing the risk to his health posed by COVID-19." *See Lopez*, 2020 WL 2489746, at *4. Accordingly, the Court will extend Mr. Perry's term of supervised release, which was initially three years, to 66 months, with the first 30 months to be served in home detention as a special condition of Mr. Perry's supervised release. *See* Docket No. 52. Such sentence is sufficient but not greater than necessary to accomplish the goals of sentencing established by 18 U.S.C § 3553(a). Finally, the Court finds that releasing Mr. Perry to home confinement presents no danger to the safety of any other person or to the community. *See* U.S.S.G. § 1B1.13(2).

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Mr. Lyle Perry's Renewed Motion for Compassionate Release [Docket No. 67] is **GRANTED IN PART**. It is further

**ORDERED** that the defendant's previously imposed sentence of incarceration is reduced to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). It is further

**ORDERED** that this order is stayed for up to fourteen days, for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate

travel arrangements, and to ensure the defendant's safe release. The defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall notify the court. It is further

**ORDERED** that the defendant must provide the complete address where the defendant will reside upon release to the probation office in the district where he will be released because it was not included in the motion for sentence reduction. It is further

**ORDERED** that, pursuant to 18 U.S.C. § 3582(c)(1)(A), the defendant is ordered to serve a "special term" of supervised release of 29 months. The conditions of the "special term" of supervision are

(1) The defendant will be monitored by location monitoring technology as determined by the probation officer for a period of 29 months. Mr. Perry must abide by all technology requirements and follow the rules and regulations of the location monitoring program. He must pay the costs of the program based on his ability to pay. Location monitoring technology will be used to monitor his movement in the community as well as other court-imposed conditions of release: he is restricted to his residence at all times; except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the officer; and

(2) all other previously imposed conditions of supervised release, as set out in the Judgment [Docket No. 53] entered on December 12, 2019.

It is further

**ORDERED** that, upon completion of the "special term" of supervised release, the defendant shall be on supervised release for the originally imposed term of 36 months. The conditions of this term of supervision shall be the same as those set out in the Judgment [Docket No. 53] entered on December 12, 2019.

DATED July 20, 2020.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge